IN THE UNITED STATES DISTRICT COURT RECEIVED CLERK'S OFFICE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION                2017 FEB 27 ⊃ 12: 28

Michael A. Hough,                          )        Case No. 8:16-cv-00259-RMG OF COURT
                                           )                   DISTRICT OF SOUTH CAROLINA
                    Petitioner,            )                        CHARLESTON, SC
                                           )
        v.                                 )        **ORDER AND OPINION**
                                           )
Leroy Cartledge,                           )
                                           )
                    Respondent.            )
                                           )

        Michael A. Hough ("Petitioner") is a state prisoner confined at McCormick Correctional

Institution in South Carolina. Petitioner is proceeding *pro se* and seeks habeas relief under 28

U.S.C. § 2254. This matter is before the Court on the Report and Recommendation ("R. & R.")

of the Magistrate Judge to grant Respondent's motion for summary judgment and deny the

habeas petition. (Dkt. No. 17.) Petitioner filed objections to the R. & R. in October 2016. (Dkt.

No. 23.) This Court has reviewed the record in this matter, the decisions of the state courts, the

briefs of the parties, the Magistrate's R. & R., Petitioner's objections to the R. & R., and the

relevant case law. For the reasons below, this Court **GRANTS** Respondent's motion for

summary judgment and **DENIES** the habeas petition.

I.      **Background**

        A.      **Indictment and Trial**

        Petitioner was indicted on one count of murder in October 2008, and he proceeded to trial

by jury on June 22, 2009. (Dkt. No. 11-1 at 179-80.) Cornelius J. Riley and Jason D. Kirincich

represented Petitioner at trial. The trial court dissolved the jury when one juror discovered

information about Petitioner's criminal history and shared it with the other jurors. On July 28,

2009, represented by Mr. Riley, Petitioner pled guilty to voluntary manslaughter and waived his

right to a jury trial. (*Id.* at 88-109.) The court sentenced Petitioner to twenty-three (23) years in prison. (*Id.* at 108.) There were no direct appeals.

### B.    Post-Conviction Relief

On November 20, 2009, Petitioner filed a *pro se* application for post-conviction relief (PCR) based on ineffective assistance of counsel. (*Id.* at 110.) Petitioner alleged that Mr. Riley coerced him to plead guilty when he incorrectly told Petitioner that he could not receive an involuntary manslaughter jury instruction at trial. Petitioner argued that because there was evidence of a struggle over a weapon between himself and the victim, he may have been able to obtain an involuntary manslaughter instruction at trial. (*Id.* at 118.) The State filed a return to the petition on March 19, 2010 and requested an evidentiary hearing. (*Id.* at 119-22.) Jeremy Thompson represented Petitioner at his PCR hearing on June 7, 2011.

In its July 22, 2011 order granting Petitioner's PCR application, the PCR court made the following findings of fact from the record and that hearing:

> The facts in this case are not in significant dispute. According to the Applicant, on April 17, 2008, he and two other individuals planned to rob the home of Rodney Baskins, a known drug dealer. They went by the house but saw that there were people at the home, so they left and planned to come back when the home was [unoccupied]. When they returned, they saw that there [were] people still in the home. The Applicant told the others that he would just go up to the home and rob Baskins. However, on his way up to the home, the Applicant thought better of his plan and decided he was going to sell his gun. Before he reached the home, the Applicant encountered Francis "Puddin" Horton, the victim in this case, and offered to sell him the gun. The victim asked to examine the gun, but the Applicant refused. The victim then grabbed the gun and a struggle ensued. During the struggle, the victim was fatally shot. [FN1] The Applicant testified that he did not know who pulled the trigger and that he did not mean to shoot the victim.

> At the time of the incident, the Applicant was on community supervision. Following the Applicant's arrest, his community supervision was revoked and he was placed back into SCDC custody. For the bulk of the Applicant's service of this sentence, he was housed at Lieber Correctional Institution in Ridgeville, South Carolina. The Applicant was released from SCDC custody on April 1, 2009, and was returned to the Kershaw County Detention Center, where he remained until his plea. Although the Applicant was scheduled to proceed to trial

•

the week of June 22, 2009, defense counsel had only met with the Applicant for a total of three to four hours on a few occasions prior to that date. See 6/22/09 Tr. p. 4 at 23-25. At the outset of that trial, the Applicant attempted to have defense counsel relieved, but the motion was denied. The trial was ultimately continued after a juror obtained the Applicant's criminal record and shared it with the other jurors. See 6/22/09 Tr. p. 66, lines 12-22; p. 72, lines 3-22.

Prior to the aborted trial, the Applicant told defense counsel that he was not present at Baskins' home the night of the shooting and that he had nothing to do with the death of the victim. Following the trial, the Applicant sent defense counsel a letter detailing his involvement in the death of the victim. Defense counsel sent a letter back to the Applicant stating

> Please remember that, as you've told me, [1] you went to Rodney's house with a gun; [2] you had the gun out and it went off in a struggle; and [3] a man died. If the prosecution can prove those three things, as I believe they can, the jury will have no choice but to convict you of at least voluntary manslaughter, which the State has offered.

Letter to Applicant dated July 17, 2009. [FN2] Defense counsel testified before this Court that while he did not recall the Applicant telling him about the attempted sale of the firearm, the letter to the Applicant effectively summarized his advice to the Applicant about accepting a plea deal. The Applicant testified that defense counsel never advised him that evidence of a struggle over the gun could be used to argue for the lesser-included offense of involuntary manslaughter at trial. The Applicant further testified that had he known that the jury could have been instructed on the crime of involuntary manslaughter, he would have proceeded to trial.

[FN1:] Although the State's witnesses would have disagreed with the Applicant as to how the incident began, the State informed the plea court that a struggle over the gun did occur. See Guilty Plea Tr. p. 8, lines 2-6.

[FN2:] This letter was admitted as an exhibit during the hearing.

(*Id.* at 171-72.) Relying on these facts and the decisions of two South Carolina courts which had

found that evidence of a struggle over a weapon supports submission of an involuntary

manslaughter charge to the jury, the PCR court found that "counsel's advice was incorrect as a

matter of law." (Dkt. No. 11-1 at 174); *see Tisdale v. State*, 662 S.E.2d 410, 412 (S.C. 2008)

("Evidence of a struggle between the defendant and the victim over a weapon supports

submission of an involuntary manslaughter charge."); *see also Casey v. State*, 409 S.E.2d 391,

-3-

392 (S.C. 1991) ("Evidence of a struggle between a defendant and a Victim over a weapon is sufficient for submission of an involuntary manslaughter instruction to the jury.") Respondent argued that the struggle over the gun alone was not sufficient to support a charge of involuntary manslaughter when Petitioner's conduct did not otherwise meet either definition of involuntary manslaughter. The PCR court disagreed with Respondent's position on this point, but it nonetheless found that Petitioner might have been entitled to an involuntary manslaughter charge at trial based on the first definition[1] of involuntary manslaughter: the unintentional killing of another without malice but while engaged in an unlawful activity not tending to cause death or great bodily harm.[2]

Notably, the PCR court found that to the extent there was any dispute at the PCR hearing about whether Petitioner had given counsel the full version of events prior to pleading guilty, "Counsel's failure to sufficiently communicate with the Applicant led to a breakdown in the attorney/client relationship that resulted in the Applicant holding back information from defense counsel." (Dkt. No. 11-1 at 175.) Defense counsel met with Petitioner for only three to four hours in advance of Petitioner's scheduled trial for murder. (Id.)

At his PCR hearing, Petitioner testified that he was prejudiced by his counsel's deficient performance because he would have proceeded to trial instead of pleading guilty had he received correct legal advice. The PCR court found Petitioner credible on this point: "[P]roper advice

---

[1] The two definitions of involuntary manslaughter in South Carolina are generally cited as a pair. In South Carolina, involuntary manslaughter is the unintentional killing of another without malice while engaged in either (1) the commission of some unlawful act **not amounting to a felony** and not naturally tending to cause death or great bodily harm, or (2) the doing of a lawful act with a reckless disregard for the safety of others. *State v. Sams*, 764 S.E.2d 511, 514 (S.C. 2014) (emphasis added). The PCR court omitted the "not amounting to a felony" caveat in the first definition.

[2] The PCR court found that unlawful sale of a firearm was not an activity that naturally tends to cause death or great bodily harm.

about the possible results at trial, instead of the improper advice which was given, would have resulted in this case ending at trial, not at a plea." (*Id.* at 176)

### C.     PCR Appeal

On September 26, 2011, the state filed a petition for writ of certiorari in the Supreme Court of South Carolina on the following two issues:

1) Whether Counsel's advice was correct that involuntary manslaughter did not apply considering the factual scenario relayed to him by his client?

2) Whether counsel's advice was correct that involuntary manslaughter did not apply considering the new version of events as told at the PCR hearing?

(Dkt. No. 11-3 at 3.) The Supreme Court of South Carolina transferred the case to the South Carolina Court of Appeals. Robert Dudek represented Petitioner at this stage. On February 11, 2015, the South Carolina Court of Appeals reversed the PCR court in a one-and-a-half page opinion. The Court of Appeals said the PCR court erred when it failed to consider that Petitioner was a felon in possession of a weapon at the time of the incident. (Dkt. No. 11-9 at 4-5.) The Court of Appeals said Petitioner's felonious possession of a weapon disqualified him from an involuntary manslaughter jury instruction under the first definition of involuntary manslaughter which excludes those engaged in a felony. *See State v. Sams*, 764 S.E.2d at 514. The Court of Appeals denied Petitioner's petition for a rehearing on March 19, 2015. (*Id.* at 14.) Petitioner then filed a petition for writ of certiorari in the South Carolina Supreme Court. (Dkt. No. 11-10.) On November 19, 2015, the South Carolina Supreme Court denied that petition to review the decision of the Court of Appeals. (Dkt. No. 11-12.)

### D.     Petition for Writ of Habeas Corpus

In his habeas petition to this Court, Petitioner has alleged that his defense counsel was ineffective when he failed to advise Petitioner that he could receive an involuntary manslaughter jury instruction at trial. As a second ground for relief tied to the same issue, Petitioner argues that

-5-

he did not enter his plea knowingly and intelligently due to the incorrect advice he received from counsel. (Dkt. No. 1.) Respondent filed a motion for summary judgment and a return and memorandum to the petition. (Dkt. Nos. 11, 12.)

## II.    Legal Standard

### A.    *Pro Se* Petitions

Petitioner brought this action *pro se*, so the Court will liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.

### B.    Habeas Corpus

Claims that were adjudicated on the merits in a state court proceeding cannot be the basis for federal habeas corpus relief unless the challenged decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

-6-

C.    **Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees defendants the right to effective assistance of counsel in criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To make a case for habeas relief on the grounds of ineffective assistance of counsel at trial, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104.

The Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Id.* In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Courts are reluctant to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 562 U.S. at 109. This rule, however, is not absolute where the purported strategic decision is based upon an error or ignorance of the law by trial counsel. *Wilson v. Mazzuca*, 570

F.3d 490, 502 (2d Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy") (*quoting Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the Petitioner's options is "erected upon . . . a rotten foundation" and is not entitled to deference) (*quoting Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

To satisfy the prejudice prong of *Strickland* in the context of a guilty plea, a prisoner must only show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### D.    Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass taken together require a habeas petitioner to submit his claims for relief to the state courts first. This Court will dismiss a habeas corpus petition filed before the petitioner has exhausted available state court remedies or otherwise bypassed seeking relief in state courts absent the limited circumstances detailed below.

### 1.    Exhaustion

Under 28 U.S.C. § 2254, Petitioner must exhaust his state court remedies before seeking habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody may attack the validity of his conviction in two primary ways: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires a petitioner to state all grounds for relief in the

direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90. If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must move to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007). Further, strict deadlines govern direct appeals and PCR applications in South Carolina courts. A notice of direct appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

          2.      Procedural Bypass

The doctrine of procedural bypass, sometimes referred to as procedural bar or procedural default, applies when a petitioner seeks habeas corpus relief based on an issue he can no longer pursue in state court because he failed to raise it at the appropriate time in state court. In such a situation, the petitioner has bypassed his state remedies, so he is procedurally barred from raising the issue in a federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can

occur at any level of state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *See id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17- 27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner fails to file a direct appeal or a PCR application before the filing deadlines have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).

3.    Cause and Prejudice Exception

The exhaustion requirement is not jurisdictional. If a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Murray v. Carrier*, 477 U.S. 478, 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier,* 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

-10-

Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

## III.    Analysis

Petitioner pursues two separate grounds for relief in his petition that turn on the same question: whether Petitioner's counsel correctly advised petitioner that the best jury instruction he could receive at trial was for voluntary manslaughter:

> Ground One: Trial counsel was ineffective in failing to advise Petitioner that evidence of a struggle between a defendant and a victim over a weapon is sufficient for submission of an involuntary manslaughter instruction to the jury.

> Ground Two: Petitioner's plea was not knowingly and intelligently entered into in violation of the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 14 of the South Carolina Constitution.

### A.    Ground One

Respondent contends that the South Carolina Court of Appeals' determination that Petitioner would not have been entitled to an involuntary manslaughter jury instruction at trial is a state court determination that turns purely on an issue of state law so is not reviewable in a federal habeas action. (Dkt. No. 11 at 17–18) (*citing Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")). Petitioner, however, has framed his claim as one of ineffective assistance of counsel rather than a direct challenge to a determination of a state law issue; though, in this case, the former necessarily implicates the latter. When the constitutional right at issue concerns ineffective

assistance of counsel, the Court "may consider state issues that counsel did not pursue in light of *Strickland*'s requirements." *Salyer v. Sternes*, 34 F. App'x 238, 240 (7th Cir. 2002). However, "§ 2254 does not permit us to reexamine state-court interpretations of state law." *Id.* at 241.

The PCR court granted relief because it found that Petitioner's counsel was ineffective when he advised Petitioner that the best he could get at trial was a voluntary manslaughter jury instruction. Specifically, the PCR court determined that evidence of a struggle over a weapon was likely sufficient to obtain an involuntary manslaughter charge in South Carolina and, in the alternative, that the evidence could have supported an involuntary manslaughter jury instruction under the first definition of involuntary manslaughter.

The South Carolina Court of Appeals reversed, finding that evidence of a struggle over a weapon is insufficient to obtain an involuntary manslaughter jury instruction when Petitioner's conduct did not meet the first definition of involuntary manslaughter which (stated correctly) excludes those engaged in a felony. Under § 2254, this Court cannot reexamine the South Carolina court's interpretation of state law, in this case that Petitioner would not have been entitled to an involuntary manslaughter jury instruction based on the first definition of involuntary manslaughter in light of the factual scenarios presented at the PCR hearing. Viewing the Court of Appeals' decision through the lens of ineffective assistance of counsel, this Court finds that the Court of Appeals did not make an unreasonable determination of the facts and properly applied its own state law to the facts. Further, the Court of Appeals did not unreasonably apply federal law when it reversed the PCR court's decision. For this reason, this Court grants summary judgment for Respondent on Ground One and dismisses the petition insofar as the petition asked this Court to determine whether Petitioner would have been eligible

-12-

for an involuntary manslaughter jury instruction based on the first definition of involuntary manslaughter and evidence that there was a struggle over the murder weapon.

Liberally construed, Petitioner's habeas petition also asks this Court to determine whether his counsel was ineffective for failing to advise him that the evidence could support an involuntary manslaughter jury instruction at trial under the second definition of involuntary manslaughter. Several decisions by South Carolina courts - some cited by Petitioner in his *pro se* briefings - indicate that felonious possession of a firearm may not disqualify a defendant from receiving an involuntary manslaughter jury instruction at trial under the second definition of involuntary manslaughter, particularly when there is evidence of a struggle over the murder weapon. *State v. Light*, 664 S.E.2d 465 (S.C. 2008); *Tisdale v. State*, 662 S.E.2d 410 (S.C. 2008); *State v. Mekler*, 664 S.E.2d 477 (S.C. 2008); *State v. Crosby*, 584 S.E.2d 110 (S.C. 2003); *State v. Burriss*, 513 S.E.2d 104 (S.C. 1999); *Casey v. State*, 409 S.E.2d 391 (S.C. 1991); *State v. Battle*, 757 S.E.2d 737 (S.C. Ct. App. 2014); *State v. Brayboy*, 691 S.E.2d 482 (S.C. Ct. App. 2010). Several of these cases involved fact-intensive inquiries into the nature of the struggle over a gun. In some of these cases, the defendant was in felonious possession of a firearm at the time of the incident but was still eligible to receive a jury instruction on involuntary manslaughter. The case law on this point is somewhat counter-intuitive because South Carolina courts have sometimes found that defendants involved in a struggle over a gun were engaged in a lawful act due to the struggle even though they were unlawfully armed at the time of the incident.

On PCR appeal, the Court of Appeals explicitly stated that it did not consider whether Petitioner's conduct could have supported an involuntary manslaughter instruction at trial under the second definition of involuntary manslaughter because the PCR court had not considered that

definition.[3] (Dkt. No. 11-9 at 4 n.1) For this reason, this Court finds that Petitioner has not properly exhausted his state court remedies on this issue. § 2254(b)(1)(A).

**B.    Ground Two**

Petitioner has also argued that he did not enter his plea knowingly and intelligently, in violation of the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 14 of the South Carolina Constitution. Petitioner's argument that his guilty plea was involuntary in violation of the South Carolina Constitution is not cognizable for federal review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68.

Respondent argues that Plaintiff procedurally defaulted the claim that his guilty plea was involuntary in his state court proceedings. (Dkt. No. 11 at 12–14.) Although Ground Two was raised to the PCR court, the PCR court did not rule on the issue in its order, and Petitioner failed to file a Rule 59(e) motion to preserve the issue for appellate review.  As with Ground One, this Court will grant summary judgment for Respondent on Ground Two with regard to whether the Court of Appeals correctly determined that Petitioner could not have received an involuntary manslaughter jury instruction at trial under the first definition if involuntary manslaughter even though there was evidence of a struggle over the murder weapon. However, to the extent Petitioner is asking this Court to consider whether Petitioner's guilty plea was involuntary because he was not aware that he could receive an involuntary manslaughter jury instruction

---

[3] Petitioner seeks relief on the theory that he would have been entitled to an involuntary manslaughter jury instruction at trial. Ironically, Petitioner has not yet had the opportunity to have the state courts consider whether he might have been entitled to an involuntary manslaughter jury instruction at trial under the *second* definition of involuntary manslaughter because the PCR court granted relief based on the *first* definition. The government appealed that decision to the Court of Appeals, which reversed it. Petitioner was granted PCR on his ineffective assistance of counsel claim; therefore, he had no reason to file a Rule 59(e) motion to specifically preserve this issue at that time.

based on the second definition of involuntary manslaughter, that issue has not been exhausted in state courts.

## IV.    Conclusion

For the foregoing reasons, this Court **GRANTS** Respondent's motion for summary judgment and **DENIES** the habeas petition.

## V.    Certificate of Appealability

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

February 27, 2017
Charleston, South Carolina